IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Altravise Hunt-Allen,<br><br>                      Plaintiff,<br>vs.<br><br>Branch Banking & Trust Company of South Carolina,<br><br>                      Defendant.<br>_____ | C/A: 0:12-127-JFA-SVH<br><br><br>ORDER |

The Magistrate Judge assigned to this action[1] has prepared a Report and Recommendation and opines that the defendants' motion to dismiss should be granted. The Report sets forth in detail the relevant facts and standards of law on this matter, and the court incorporates such without a recitation.

The plaintiff in this action, Altravise Hunt-Allen, asserts claims against her former employer, Branch Banking & Trust Company of South Carolina (BB&T). She asserts claims for (1) race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. (Title VII) and the Civil Rights Act of 1866, 42 U.S.C. § 1981; (2)

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

1

retaliation and violation of Title VII; and (3) wrongful conversion.

Before the Magistrate Judge, the defendant moved for summary judgment on all claims. On June 18, 2013, the Magistrate Judge issued a Report and Recommendation suggesting that the motion should be granted as to all three claims. Plaintiff timely filed objections to the Report and defendant has responded thereto. The matter thus appears ripe for this court's review.

Plaintiff began working for BB&T in January 2006, and was terminated on November 1, 2010. Her initial position was that of Relationship Banker Trainee. Later in 2006, she was promoted to Relationship Banker I and two years after that, in July 2008, she was promoted to Relationship Banker II.

As the Magistrate Judge explains in the Report and Recommendation, relationship bankers are the primary-level customer contact in each branch and are generally responsible for initiating, developing and managing customer relationships as well as providing customer service. In this position, plaintiff was expected to maintain a close working relationship with integrated relationship management (IRM) partners and to refer clients as appropriate. IRM partners are employees of BB&T's subsidiaries and affiliates who handle other aspects of a customer's financial relationship with BB&T, such as mortgages, insurance, and the like. Just as plaintiff was expected to refer clients to the IRM partners in her branch, there was an expectation that the IRM partners would refer clients to relationship bankers as well.

In August 2008, one month after plaintiff's promotion to Relationship Banker II, a routine operational audit of the Rock Hill, South Carolina branch where plaintiff worked, revealed numerous instances of unfinished work. This included time-sensitive bank documents dating back to 2006

when plaintiff began working at BB&T. Among these items were included 95 incomplete signature cards, 70 signature cards that had been signed by clients but never turned in, inner-office mail envelopes containing mail that had not been opened, bank account statements for many clients, and copies of Social Security cards and drivers licenses for customers and other employees.

As a result of these delections, BB&T branch manager Eric Bowers issued plaintiff a final written warning for her failure to appropriately process time-sensitive bank documents. This warning also outlined ways the plaintiff could improve her organization, productivity, and efficiency. She was also warned that continued failure to keep bank matters organized could result in disciplinary action up to and including termination.

In 2009, Melissa Schmidt was hired as a Relationship Banker for the Rock Hill branch. In an August 2009 meeting with Bowers to review her 2009 mid-year performance evaluation, plaintiff complained that the IRM partners were sending more referrals to Ms. Schmidt than the plaintiff because Ms. Schmidt is white and the plaintiff is African-American. Bowers conducted an immediate investigation and confidentially interviewed other employees of the bank. This investigation revealed that while some employees believed that Ms. Schmidt did, in fact, receive more IRM referrals, no employees believed race discrimination was involved. Instead, the employees believed IRM partners sent more referrals to Ms. Schmidt because she was quicker, more organized, and more accurate than the plaintiff. These observations were eventually communicated to the plaintiff.

In early 2010, Benjamin Lee became the new branch manager at the Rock Hill branch. In a May 5, 2010 meeting with Lee, plaintiff expressed her concerns that Ms. Schmidt was receiving more referrals, although she acknowledged that it was because of the IRM partners' perception that

Ms. Schmidt did a better job. Significantly, plaintiff did not, at this meeting, reiterate her claims of discrimination. At the conclusion of the meeting, Lee gave plaintiff five specific recommendations to improve her productivity and reputation at BB&T.

On August 6, 2010, Lee and Elizabeth Kakacek met with plaintiff and provided her with a second final written warning. This document listed five instances where plaintiff had failed to follow through with a responsibility to a customer, resulting in lost time by plaintiff's coworkers, negative customer experiences, and loss of business. Included in this recitation was an episode where plaintiff admitted she backdated an entry to try to receive credit for a loan to a client. Other deficiencies involved an instance in which plaintiff failed to transfer funds to a newly-opened account as she agreed to do for a customer, causing the customer's business related checks to bounce. The second final written warning also referenced repeated occasions in which plaintiff had been counseled on similar performance issues. The document advised plaintiff of specific ways she could improve her performance.

On August 30, 2010, plaintiff met with regional employee relations manager Sherri Harper and complained to her that the second final written warning was inaccurate. Plaintiff told Ms. Harper, who is African American, that she felt that she was being treated unfairly, but did not say that she believed she was being discriminated against. According to her affidavit, after this meeting with Harper, plaintiff notified Lynn Murray in Human Resources that she believed that Mr. Lee was discriminating against her based on her race. Ultimately, Harper and Lee amended the second final written warning to remove references to two of the five service breaks. When the revised document was presented to the plaintiff, she again refused to sign it, alleging further inaccuracies.

Thereafter, BB&T management continued to receive complaints from bank customers,

employees, and IRM partners regarding plaintiff's lack of organization, communication, and consumer responsiveness. Many of these deficiencies are itemized on page 7 of the Report and Recommendation. These include an episode where plaintiff mistakenly told a customer she could not give him a quote on a real estate loan unless he furnished a sales contract. This was an inaccurate statement, and the customer took his $312,000 loan elsewhere. On another occasion, plaintiff was found to have displayed BB&T brochures that had not been updated from the previous year. This had the effect of giving BB&T customers inaccurate information and price quotes.

Another episode involved a September 23, 2010 incident wherein a bank customer complained to Schmidt and Lee that plaintiff had been rude to her and refused to fix an error in the customer's check order without imposing a fee. This customer further complained that plaintiff always took too long and made mistakes. Another episode involved a situation where a customer complained to Lee that plaintiff had not removed his deceased wife's name from his BB&T accounts, despite having presented the death certificate to plaintiff a week and one half earlier when making that request. Finally, a customer complained to Bowers that she had come to the bank and approached plaintiff with several questions. Plaintiff told her that she would call her the following day and never called back.

In late October 2010, based on plaintiff's continuing service deficiencies and performance issues, Lee consulted with Harper about recommending that plaintiff's employment be terminated. After involving Kakacek's superior, Mr. Wells, the decision was made to terminate the plaintiff on November 1, 2010.

Immediately after she was terminated, plaintiff went to her office to gather personal items. A Mrs. Bergeron with BB&T watched the plaintiff as she gathered her things. Two of the items

plaintiff attempted to take with her were a certificate acknowledging plaintiff's certification as a Relationship Banker II and a plaque containing plaintiff's name and job description. As plaintiff attempted to put these items into her box, Bergeron told her that she could not take those items. In a subsequent meeting, Harper told plaintiff that Ms. Bergeron had made a mistake in telling plaintiff to leave these two items and told plaintiff that she would try to get the items back if plaintiff so desired.

## DISCUSSION

A.   Race Discrimination

The Magistrate Judge's Report and Recommendation properly sets out the well-established McDonnell Douglas regime for analyzing claims of race discrimination under Title VII. To state a prima facie claim of race discrimination, plaintiff must prove: (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated employees received more favorable treatment. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Where a plaintiff claims discriminatory discharge, the fourth element has also been identified as whether plaintiff can demonstrate that the position was filled by a similarly-qualified applicant outside of the protected class. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. *Texas Dep't. of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell-Douglas*, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her.

The Magistrate Judge agrees that the first and third elements of a plaintiff's prima facie case have been established here. The Magistrate Judge is of the opinion, however, that the plaintiff's claim fails on the second element because plaintiff cannot establish that she was satisfactorily performing her job. The Magistrate Judge relies upon the numerous deficiencies in plaintiff's performance outlined in detail in this order and in the Magistrate Judge's recommendation, in reaching this conclusion.

In response, plaintiff contends that many of the service deficiencies contain misrepresentations and false accusations. She also complains that the extensive documentation of her deficiencies is actually harmful to the defendant's case, because it demonstrates that the employer was trying to "create a paper trail against her." But, as the Magistrate Judge observes,

7

the Fourth Circuit has repeatedly held that a plaintiff's perception of herself is not relevant. *See DeJarnette v. Corning, Inc.* 133 F.3d 293, 299 (4th Cir. 1998). It is the perception of the *decision maker* which is relevant, not the self-assessment of the claimant. *Beall v. Abbott Labs*, 130 F.3d 614, 619 (4th Cir. 1997). In this case, although plaintiff may subjectively disagree with some of the performance evaluations, she has not disputed that her supervisor believed her to be at fault for the deficiencies.

    As to the fourth element of the prima facie case, the Magistrate Judge suggests that the plaintiff's claim breaks down at this level as well. Plaintiff contends that Schmidt, the other relationship banker at the Rock Hill branch, received more references but, as the Magistrate Judge suggests, plaintiff has failed to show that she and Ms. Schmidt were similarly-situated because plaintiff's job performance was inferior to that of Ms. Schmidt. In fact, as defendant notes in its memorandum, plaintiff received a final written warning in 2008, before Ms. Schmidt was a relationship banker. When plaintiff complained about discrimination in terms of referrals to Ms. Schmidt, a comprehensive investigation revealed that fellow employees believed that Schmidt did a better job and that is why more referrals were made to her. Therefore, according to the Magistrate Judge, the plaintiff has failed to show that a similarly-situated comparator outside of her protected class was treated more favorably.

    The Magistrate Judge then suggests that even if the plaintiff were able to establish a prima facie case of discrimination, summary judgment is still appropriate because the defendant has proffered a legitimate, non-discriminatory reason for terminating plaintiff, and

plaintiff has failed to submit evidence that the reason is merely a pretext for discrimination. Defendant asserts that it terminated plaintiff because she was a poor performer and had multiple service deficiencies. This is clearly a legitimate, non-discriminatory reason for termination. The burden, therefore, shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the defendant is not the true reason, but was a pretext for discrimination. In the opinion of the Magistrate Judge, plaintiff cannot meet this burden.

Plaintiff's objection to this portion of the Report and Recommendation mirrors her arguments made before the Magistrate Judge. The majority of her objections in support of the second element of her prima facie case rely upon scores she received on various personal development plans (PDPs) during her employment. These PDP scores, according to plaintiff, clearly refute the Magistrate Judge's suggestion that plaintiff's assertions of satisfactory job performance were impermissibly based on her own self-perception. She points out the scores that she received on various PDP reports, especially those made closest to her termination date. According to the plaintiff, these scores demonstrate that she was considered to be performing at an acceptable level for the defendant. The court is unpersuaded by these arguments. The defendant points out, plaintiff's PDPs over her five years of employment with BB&T—in which she never received a rating higher than the minimally-acceptable level of "performer"—reflect that plaintiff was continually given opportunities and explicit instructions by both Mr. Bowers and Mr. Lee, but plaintiff failed to improve.

The Magistrate Judge concluded that plaintiff's well-documented performance deficiencies and service breaks reflected that she failed to meet BB&T's expectations, both at the time she received fewer IRM referrals and at the time of termination.

Plaintiff also focuses upon the alleged racial animus of her supervisor, Mr. Lee. This court agrees with the Magistrate Judge that Lee's performance evaluations for plaintiff were based upon objective criteria and no subjective opinions. Moreover, Lee was not the only BB&T employee who perceived plaintiff's performance to be substandard. Her former supervisor, Mr. Bowers, was the one who issued plaintiff her first final written warning in 2008 for failing to process hundreds of time-sensitive bank documents.

Plaintiff also points to other evidence that the Magistrate Judge allegedly failed to consider regarding her job performance. She points out that early in her career, she received recognition for selling credit cards and for obtaining BB&T@Work referrals. As the Magistrate Judge notes, none of these issues has any bearing on BB&T's expectations with respect to plaintiff's pattern of performance deficiencies.

With regard to the Magistrate Judge's conclusion that Ms. Schmidt is not sufficiently "similarly situated" to be a valid comparator, plaintiff focuses on titles and time periods, but ignores the very distinguishing factor that prompted her disparity in referrals and termination: her long record of performance deficiencies and service breaks. This court agrees with the Magistrate Judge that Schmidt was not a valid comparator.

Finally, with regard to the Title VII claim, the plaintiff contends that, assuming a

prima facie case has been established, she has met her burden of showing pretext. In making this argument, plaintiff once again focuses upon Mr. Lee's alleged discriminatory animus. She points out that Lee allegedly documented many of plaintiff's performance deficiencies to himself without copying her and that she disagreed with several of the service breaks listed in her final written warnings, as well as those ultimately prompting her termination. As the defendant argues, however, Lee's decision not to copy plaintiff on additional email documentation regarding her deficiencies is not probative of pretext because it does not establish that BB&T's explanation is a lie. Performance deficiencies recorded in Mr. Lee's emails were discussed verbally with plaintiff prior to Lee's creation of a record of that discussion, and many were placed in writing in the two final written warnings she received.

  B. Retaliation.

    Title VII forbids employers from retaliation against employees for exercising their rights under the statutes, which are considered "protected activities." 42 U.S.C. § 2000e3(a). To set forth a claim of retaliation under Title VII, plaintiff must first establish a prima facie case by producing evidence that (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between the protected activity and the adverse action. The Magistrate Judge concedes that the first two elements have been shown, thus leaving the causal link inquiry as the only issue on the retaliation claim.

    The Magistrate Judge suggests that the plaintiff engaged in protected activity on two

occasions: (1) In August 2009 when she reported to Mr. Bowers, and later to Mr. Cole, that she believed she was receiving fewer referrals from IMR partners than Schmidt because of her race; and (2) on August 6, 2010, when she complained to Ms. Murray after receiving her second final written warning. The Magistrate Judge canvasses the reported decisions dealing with the causal nexus requirement, particularly in relation to the temporal proximity requirement and concludes that plaintiff has failed to show the causal link required for the third element for the prima facie case.

In her objections, plaintiff attempts to suggest that her second instance of protected activity occurred on August 30, 2010 (not August 6, 2010). She also contends that she specifically referred to the racial discrimination in the August 30, 2010 meeting which, obviously, was closer in time to her termination. However, as defendant points out in its memorandum, plaintiff has testified regarding her alleged complaint to Ms. Murray twice before, and in both instances, as well as in her memorandum in opposition to summary judgment, plaintiff asserted that the conversation occurred on August 6, 2010, the same day she received her second final written warning. The Magistrate Judge suggests, and this court agrees, that on the record before it, the court must conclude that the August 30, 2010 conversation between plaintiff and Ms. Harper did not involve allegations of racial discrimination. Thus, the August 30, 2010, closer in time to the termination, did not constitute a protected activity.

    C.    The Conversion Claim

The Magistrate Judge found that even, assuming without deciding, that plaintiff had a right of ownership to the BB&T plaque and certificate that forms the basis for her conversion claim, the claim must nevertheless fail because plaintiff did not make a demand for the items after Mrs. Bergeron told her that she could not keep them. Plaintiff argues in her objection memorandum that her act of placing these two items in her personal box before Mrs. Bergeron told her she could not keep them constituted a sufficient "demand" for those items. In responding to the objection, defendant points out that under plaintiff's theory, she made her "demand" for a return of the items *before* BB&T took allegedly wrongful possession of them. As defendant points out, to support a claim for conversion, the defendant must have "refused to surrender possession of the goods *after* demand for possession of one entitled thereto." *Causey v. Blanton*, 314 S.E.2d 346, 348 (S.C. Ct. App. 1984) (emphasis added). Plaintiff admittedly did not make a demand for the items after BB&T took possession of them. Thus, the conversion claim lacks merit.

For all the foregoing reasons, the court agrees with the Magistrate Judge that summary judgment is proper on all three of the claims asserted in this case. Accordingly, the Report and Recommendation is incorporated herein by reference, all objections by the plaintiff are overruled, and summary judgment is granted to the defendant on all claims.

IT IS SO ORDERED.

September 23, 2013                                  Joseph F. Anderson, Jr.
Columbia, South Carolina                            United States District Judge